## IN RE THE LOUISVILLE UNDERWRITERS, Petitioners.

### ORIGINAL.

No. 8. Original. Argued March 10, 1890. — Decided March 31, 1890.

The provision of the Act of March 3, 1887, c. 373, § 1, 24 Stat. 552, that " no civil suit " shall be brought before a Circuit or District Court against any person in any other district than that of which he is an inhabitant, does not apply to cases in admiralty.

A libel in admiralty *in personam* may be maintained against a corporation in any district by service there upon an attorney appointed by the corporation, as required by the statutes of the State, to be served with legal process.

THIS was a petition for a writ of prohibition. The case is stated in the opinion.

*Mr. J. R. Beckwith* for the petitioners.

*Mr. O. B. Sansum* opposing.

· MR. JUSTICE GRAY delivered the opinion of the court.

. This is a petition by a corporation of the State of Kentucky·
for a writ of prohibition to the judge of the District Court of
the United States for the Eastern District of Louisiana, to
prohibit him from entertaining jurisdiction of a libel in admi-
ralty *in personam*, filed April 23, 1889, by the Natchez and
New Orleans Packet and Transportation Company, also a
corporation of Kentucky, against the petitioner, "in a cause
of contract civil and maritime," upon a policy of insurance by ·
which the petitioner insured against perils · of the seas and
rivers and other perils a steamboat of the libellant employed
in the navigation of the Mississippi River.

By the public statute of Louisiana of February 26, 1877, c.
21, no insurance company organized under the laws of any·
other State shall take risks. or transact any business through
an agent in Louisiana, without having filed in the office of the
secretary of State a certified copy of a vote of its directors,
appointing such an agent there to transact business and to
take risks, accompanied by a warrant of appointment from
the company, containing an express consent that service of
legal process on him shall be as valid as if served on the com-
pany.

By a copy of the record of the proceedings in the District
Court, annexed to the return to the rule to show cause why a
writ of prohibition should not issue, it appears that the libellee
had filed with the secretary of State of Louisiana a copy of a
vote of its directors, as well as a warrant of appointment,
appointing William M. Railey its attorney at New Orleans,
as required by the statute of Louisiana; that the policy sued
on was signed by the libellee's president and secretary at
Louisville in the State of Kentucky, was not to be binding
until countersigned by its authorized agent at New Orleans,
and was countersigned by Railey; that a citation to the libel-
lee was issued by the District Court, and served by the mar-
shal upon Railey in person; that a motion to quash the libel,
and an exception to it, upon the ground, among others, that
neither party was an inhabitant of the Eastern District of

Louisiana and that the libellee had no property or credits within the district, were overruled by the District Court, and the libellee ordered to answer; and that the libellee thereupon answered, and took depositions under commission.

Before the cause had been brought to a hearing, the petition for a writ of prohibition was presented to this court.

It is admitted that the District Courts of the United States, sitting in admiralty, have jurisdiction of the matter of the libel. *Insurance Co.* v. *Dunham*, 11 Wall. 1. But it is argued, in support of the prohibition, that no libel *in personam* can be sustained against a corporation in a district not within the State in which it is incorporated; and this argument is rested on the latter part of the following provision in the act of March 3, 1887, c. 373, § 1:

"But no person shall be arrested in one district for trial in another in any civil action before a Circuit or District Court; and no civil suit shall be brought before either of said courts against any person by any original process of proceeding in any other district than that whereof he is an inhabitant." 24 Stat. 552.

A brief reference to previous acts of Congress and decisions of this court makes it clear that this provision has no application to causes of admiralty and maritime jurisdiction.

By the ancient and settled practice of courts of admiralty, a libel *in personam* may be maintained for any cause within their jurisdiction, wherever a monition can be served upon the libellee, or an attachment made of any personal property or credits of his; and this practice has been recognized and upheld by the rules and decisions of this court. Rule 2 in Admiralty; *Manro* v. *Almeida*, 10 Wheat. 473; *Atkins* v. *Disintegrating Co.*, 18 Wall. 272; *New England Ins. Co.* v. *Detroit & Cleveland Steam Navigation Co.*, 18 Wall. 307; *Cushing* v. *Laird*, 107 U. S. 69; *Devoe Manufacturing Co., Petitioner*, 108 U. S. 401.

The judgment, delivered at October term, 1873, in *Atkins* v. *Disintegrating Co.*, just cited, is really decisive of this case.

The question there presented was the construction of that provision of the Judiciary Act of September 24, 1789, c. 20,

§ 11, by which, after defining the jurisdiction of the Circuit Courts in "suits of a civil nature at common law or in equity," in which the United States were plaintiffs, or an alien was a party, or the suit was between a citizen of the State where it was brought and a citizen of another State; and also defining the criminal jurisdiction of the Circuit and District Courts; it was provided as follows:

"But no person shall be arrested in one district for trial in another in any civil action before a Circuit or District Court; and no civil suit shall be brought before either of said courts against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." 1 Stat. 79.

Upon a consideration of the acts of Congress upon the subject, and especially of other sections of the Judiciary Act of 1789, of which section 9 conferred upon the District Courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction," and jurisdiction concurrent with the Circuit Courts of certain "suits at common law" by the United States; 1 Stat. 77; section 21 authorized "final decrees in a District Court in causes of admiralty and maritime jurisdiction" to be reviewed in the Circuit Court on appeal, and section 22 authorized "final decrees and judgments in civil actions in a District Court" to be reviewed in the Circuit Court by writ of error; 1 Stat. 83, 84; it was demonstrated that the provision of section 11, above quoted, restricting "civil suits" to the district of which the defendant was an inhabitant or in which he might be found, did not include causes of admiralty jurisdiction; and it was therefore adjudged that a libel in admiralty *in personam* might be maintained against a corporation by attachment of its goods in a district not within the State in which it was incorporated.

The provisions of sections 9, 11, 21 and 22 of the Judiciary Act of 1789, above quoted, were reenacted in substantially the same words in the Revised Statutes. Rev. Stat. §§ 563, cls. 4, 8; 629, cls. 1–3; 631, 633, 739.

The provision of section 11 of the act of 1789, embodied in

.§ 739 of the Revised Statutes, was reënacted with no material alteration in the act of March 3, 1875, c. 137, § 1, as follows:

: " But no person shall be arrested in one district for trial in another in any civil action before a Circuit or District Court ; and no civil suit shall be brought before either of said courts . against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process 'or-commencing such proceeding." 18 Stat. 470.

The only changes (beyond the substitution of " person " for "inhabitant of the United States ") consisted in inserting, in the middle of the sentence, after the words " any original process," the words " or proceeding ; " and in substituting, at the end of the sentence, for the words " serving the writ," the words " serving such process or commencing such proceeding." These changes in no way extended the meaning of the leading words. " civil action" and " civil suit ; " but . merely affected the mode of commencing such action or suit, and were probably intended to cover actions at law commenced otherwise than by process, according to the practice, pleadings and forms of proceeding in the courts of the States, which had been made applicable to the Circuit and District Courts of the United States by the act of 1872, reënacted in the Revised Statutes. Act of June 1, 1872, c. 255, § 5, 17 Stat. 197; Rev. Stat. § 914.

The provision of the act of 1887 on which the petitioner relies differs from the corresponding provision of the act of 1875 in two particulars only:

. 1st. In the clerical mistake, "process of proceeding" for "process or proceeding," which has been set right by the act of 1888 correcting the enrolment of the act of 1887. Act of August 13, 1888, c. 866, § 1, 25 Stat. 433.

2d. In striking out the last clause, permitting civil suits to be brought in the district in which the defendant is found at the time of service, and thus confining them to the district of which he is an inhabitant. This change, far from weakening the reason of the decision in *Atkins* v. *Disintegrating Co.*, above cited, greatly strengthens it. . .

Courts of admiralty are established for the settlement of disputes between persons engaged in commerce and navigation, who, on the one hand, may be absent from their homes for long periods of time, and, on the other hand, often have property or credits in other places. In all nations, as observed by an early writer, such courts "have been directed to proceed at such times, and in such manner, as might best consist with the opportunities of trade, and least hinder or detain men from their employments." Zouch. Adm. Jur. 141. In the same spirit this court has more than once said: "Courts of admiralty have been found necessary in all commercial countries, for the safety and convenience of commerce and the speedy decision of controversies, where delay would often be ruin." *The Genesee Chief*, 12 How. 443, 454; *Insurance Co.* v. *Dunham*, 11 Wall. 1, 24. To compel suitors in admiralty (when the ship is abroad and cannot be reached by a libel *in rem*) to resort to the home of the defendant, and to prevent them from suing him in any district in which he might be served with a summons or his goods or credits attached, would not only often put them to great delay, inconvenience and expense, but would in many cases amount to a denial of justice.

In the present case, the libellee had, in compliance with the law of Louisiana, appointed an agent at New Orleans, on whom legal process might be served, and the monition was there served upon him. This would have been a good service in an action at law in any court of the State or of the United States in Louisiana. *Lafayette Ins. Co.* v. *French*, 18 How. 404; *Ex parte Schollenberger*, 96 U. S. 369; *New England Ins. Co.* v. *Woodworth*, 111 U. S. 138, 146. And no reason has been or can be suggested why it should not be held equally good in admiralty.

The District Court for the Eastern District of Louisiana having jurisdiction both of the cause and of the parties, the

*Writ of prohibition is denied.*

A similar decision was made in the case, argued and decided at the same time, No. 9, Original, *Ex parte* THE ST. PAUL FIRE AND

MARINE INSURANCE COMPANY OF ST. PAUL, MINNESOTA, which differed only in the petitioner and libellee being a corporation of Minnesota.